UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Thomas B. McNamara

In re:

SIGNIA, LTD,

Debtor.

Bankruptcy Case No. 23-14384 TBM
Chapter 11 Subchapter V

___

**OPINION AND ORDER DENYING MOTION TO EXTEND PLAN FILING DEADLINE**
___

I. **Introduction.**

A few years ago, Congress enacted a major addition to Chapter 11 of the Bankruptcy Code[1]: the Small Business Reorganization Act of 2019 (the "SBRA").[2] The SBRA (commonly referred to as "Subchapter V"), was designed to streamline the reorganization and rehabilitation process for small business debtors. Substantively, the SBRA lowered the Chapter 11 bar for confirmation of a plan of reorganization by permitting confirmation even if all classes of creditors reject the proposed plan and by eliminating the so-called "absolute priority rule." And, only debtors may propose a Subchapter V reorganization plan. Procedurally, Congress simplified some of the more cumbersome aspects of standard Chapter 11 cases by eliminating unsecured creditors' committees and disclosure statements. Suffice it to say that the SBRA offers many potential advantages for qualifying Chapter 11 debtors.

However, Subchapter V cases are supposed to proceed quickly. Section 1189(b) mandates the timing for the Subchapter V reorganization plan:

> The debtor shall file a plan not later than 90 days after the order for relief under this chapter, except that the court may extend the period if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable.

Notwithstanding Congress' plain timing requirement, the Court has observed over the last several years that Subchapter V debtors and their attorneys in this jurisdiction almost never meet the 90-day mandate. Usually, debtors ask for an extension on generic grounds such as the press of other business, problems with

---

[1]   All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. Unless otherwise indicated, all references to "Section" are to sections of the Bankruptcy Code.

[2]   Pub L. No. 116-54, 133 Stat. 1079 (mainly codified at 11 U.S.C. §§ 1181-1195).

accounting, or the difficulty in reaching consensus with creditors. Worse still, some debtors and their counsel manipulate the deadline by filing bogus placeholder plans of reorganization on the ninetieth day. Such plans are obviously deficient (many containing blanks, inadequate information, and missing financials) and have no chance of confirmation. However, they seem to be filed in an attempt to pay lip service to the 90-day Section 1189(b) requirement while obviously skirting the import of the statute. As a result, the Court's observation (admittedly not a full statistical analysis) is that Congress' intent routinely has been flouted because confirmation in Subchapter V cases often takes the same amount of time or even longer than in standard Chapter 11 reorganizations (especially so when debtors also engage in numerous rounds of pre-confirmation plan amendments or modifications).

The current issue comes before the Court on the "Motion to Extend Plan Filing Deadline" (Docket No. 119,[3] the "Motion to Extend") filed by the Debtor, Signia, Ltd. (the "Debtor"). The Debtor filed for protection under Chapter 11 Subchapter V on September 27, 2023. So, under Section 1189(b), the Debtor should have filed a viable Subchapter V plan no later than December 27, 2023. Instead of doing so, the Debtor requested a 44-day extension of the 90-day deadline so that it could prosecute its debtor-in-possession financing motion. As typical, neither the United States Trustee, the Subchapter V Trustee, nor any other creditors or parties in interest objected. Then, the debtor withdrew the debtor-in-possession financing motion but still has not filed a Subchapter V plan. Although the matter of an extension may seem minor to the parties, the Court rejects the requested delay and issues this decision to encourage debtors and their counsel to comply with the letter and spirit of Section 1189(b) by timely filing viable Subchapter V plans.

## II.  Jurisdiction and Venue.

This Court has jurisdiction to enter final judgment on the Debtor's Motion to Extend pursuant to 28 U.S.C. § 1334. Issues concerning the Subchapter V plan confirmation process are core matters under 28 U.S.C. §§ 157(b)(2)(A) (matters concerning administration of the estate) and (L) (confirmation of plans). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.  Procedural Background.

### A.  The Debtor's Chapter 11 Subchapter V Filing.

The Debtor filed this Chapter 11 reorganization case on September 27, 2023. The Debtor elected to proceed under Subchapter V. The 90-day statutory period for the Debtor to file its plan ended on December 27, 2023.

---

[3] When referring to a document filed in the CM/ECF docket for this Subchapter V case, the Court will use the convention "Docket No. ____".

**B.     The Debtor's Motion to Extend.**

On December 14, 2023, the Debtor filed the Motion to Extend requesting that the 90-day statutory deadline to file a Subchapter V plan be extended from December 27, 2023 for an additional 44 days (through February 9, 2024). In support of the Motion to Extend, the Debtor alleges that it sought post-petition financing from the Sulit Group, Ltd. ("Sulit") (its 80% owner) on September 29, 2023 (Docket No. 22, the "Financing Motion"). The Court approved the requested financing on an interim basis (Docket No. 37). Creditors Male Excel Medical, P.A. and Male Excel, Inc. (together, "Male Excel") later objected to approval of the financing on a final basis. The Court set a hearing on the final approval of the Financing Motion for January 16, 2024. The Debtor explained the need for the extension of time to file a Subchapter V plan as follows:

> If the financing is approved, on the terms proposed or any other terms, the Debtor's plan will have to provide for repayment. Moreover, because the financing, if approved, will likely receive heightened, priority treatment, the repayment terms will impact the payments provided in the plan to lower priority creditors. Until the financing terms are set and approved by the Court it is impossible for the Debtor to formulate treatment of both the post-petition lender and the treatment of unsecured creditors in the plan.

Motion to Extend ¶ 8. So, the only reason advanced by the Debtor for the Motion to Extend is the pendency of the Financing Motion. The Debtor did not support the Motion to Extend with an affidavit or any evidence.

**C.     No Creditor or Party in Interest Objected to the Motion to Extend.**

The Debtor provided notice of the Motion to Extend (including identifying an objection deadline) to creditors and other parties in interest. No objections were filed. Even though no objection was filed, "the fact that the Motion [to Extend] was unopposed is not in itself a reason to grant the requested relief. The Court is not a rubber stamp. In short, the fact that no party in interest opposed the Motion [to Extend] does not alone relieve the Debtor of its burden to establish that an extension is warranted under the circumstances of this case." *In re Online King LLC*, 629 B.R. 340, 344 n.5 (Bankr. E.D.N.Y 2021).

**D.     The Debtor Voluntarily Withdrew the Financing Motion.**

About a week after filing the Motion to Extend, on December 22, 2023, the Debtor filed its "Notice of Withdrawal of Motion for Interim and Final Orders Approving Financing Pursuant to 11 U.S.C. § 364 and Motion to Vacate Hearing" (Docket No. 130). Thus, the Debtor voluntarily withdrew its Financing Motion referred to in the Motion to Extend as a "threshold plan issue which must be resolved prior to plan filing." Motion to Extend ¶ 9. The Debtor also asked the Court to vacate the January 16, 2024, hearing on the Financing Motion. Because the Debtor withdrew its Financing Motion,

the Court vacated the hearing. Thus, the sole reason for a delay identified in the Motion to Extend (*i.e.* adjudication of the Financing Motion), no longer exists.

## IV.     Legal Analysis.

### A.     Subchapter V and the Section 1189(b) Plan Filing Deadline.

In 2019, Congress revised Chapter 11 of the Bankruptcy Code and enacted the SBRA also referred to as Subchapter V. As noted previously by this Court, the SBRA "was designed to streamline the reorganization and rehabilitation process for small business debtors." *In re Ikalowych*, 629 B.R. 261, 266 (Bankr. D. Colo. 2021). The timing requirements of Subchapter V are key. "Congress contemplated an accelerated process for Subchapter V cases." *In re Trepetin*, 617 B.R. 841, 846 (Bankr. D. Md. 2020); *see also In re Seven Stars on the Hudson Corp.*, 618 B.R. 333, 340 (Bankr. S.D. Fla. 2020) ("Subchapter V by its very nature is intended to be an expedited process."); *Online King*, 629 B.R. at 350 (Subchapter V "is a fast-tracked process aimed at giving the qualifying debtor a less expensive and accelerated path to reorganize. . .").

To achieve an "accelerated" or "fast-tracked" process, Congress enacted Section 1189(b), a one-sentence timing requirement which states:

> The debtor shall file a plan not later than 90 days after the order for relief under this chapter, except that the court may extend the period if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable.

### B.     Interpretation of Section 1189(b).

The main issue at play in the Motion to Extend is whether the Debtor has established that "the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable." It is the Debtor's burden of proof to show grounds which justify an extension of time under Section 1189(b). *Online King*, 629 B.R. at 349 ("the burden of proof rests with the debtor to establish the limited circumstances under which a court may grant an extension of the statutory deadline."); *In re Excellence 2000, Inc.*, 636 B.R. 475, 480 (Bankr. S.D. Tex. 2022) (same); *In re HBL SNF, LLC*, 635 B.R. 725, 729 (Bankr. S.D.N.Y. 2022) (same); *In re Trinity Legacy Consortium, LLC*, 2023 WL 6217784, at *3 (Bankr. D.N.M. Sept. 25, 2023) (same); *Seven Stars*, 618 B.R. at 340 (same).

The Section 1189(b) "burden is stringent and a higher standard that the 'for cause' standard [in other Sections of the Bankruptcy Code]." *HBL SNF*, 635 B.R. at 729; *see also Seven Stars*, 618 B.R. at 343 ("Based upon a plain reading of [Section 1189(b)], it is a higher standard than the mere 'for cause' standard . . . ."); *In re Northwest Child Dev. Ctrs.*, 2020 WL 8813586, at *2-3 (Bankr. M.D.N.C. Dec. 8, 2020) (characterizing Section 1189(b) standard as "clearly higher" than "for cause," "difficult,"

4

and a "heightened burden"). "The strict standard reflects the goals of Subchapter V to move a case forward expeditiously, to keep expenses down for the debtor, and to provide the debtor with an accelerated path to reorganize." *HBL SNF*, 635 B.R. at 729.

Generalized excuses for an extension under Section 1189(b) will not do. *In re Majestic Gardens Condo. Assoc., Inc.*, 637 B.R. 755 (Bankr. S.D. Fla. 2022) (attorney calendaring error not enough to warrant Section 1189(b) extension); *HBL SNF*, 635 B.R. at 730 ("courts have denied the request for an extension to file a plan where a Subchapter V debtor is relying on 'a generalized excuse applicable to any business bankruptcy case.'"); *Online King*, 629 B.R. at 352-53; *In re 5 Star Prop. Grp., Inc.*, 2021 WL 247782, at *1 (Bankr. M.D. Fla. Jan. 1, 2021) (setting hearing and signaling that debtor may not have stated grounds for a Section 1189 extension where debtor argued only that it "requires additional time to complete certain calculations and finalize its plan"); *Northwest Child Dev. Ctrs.*, 2020 WL 8813586, at *3 (denying Section 1189(b) extension where debtor's only asserted justification was weather preventing property walkthrough and COVID pandemic; noting that request for extension not supported by affidavits, exhibits, or testimony).

Courts concur that the debtor bears the burden of proof for an extension, that the Section 1189(b) timing requirement is "strict," "stringent," or "high," and that generalized excuses are insufficient. Courts differ, however, as to the standards to be used for deciding what exactly constitutes "*circumstances for which the debtor should not justly be held accountable.*"

    **1.**    <u>**Interpretation of Section 1189(b) in Case Law**</u>.

        **a.**    <u>**The Beyond-the-Debtor's-Control Standard**</u>.

The *Seven Stars* decision, 618 B.R. 333, states what this Court characterizes as the "Beyond-the-Debtor's-Control Standard" for Section 1189(b). After surveying prior Section 1189(b) decisions, the *Seven Stars* court ruled succinctly:

> The statute [Section 1189(b)] asks if the need for an extension is due to *circumstances* beyond the debtor's control.

*Id*. at 345 (emphasis in original). Thus, the Court must assess whether "external factors — beyond [the debtor's] control — contributed to [the debtor's] inability to comply with the deadlines." *Id*. The *Seven Stars* court identified a now-familiar example of when circumstances beyond the debtor's control might justify an extension of the Section 1189(b) plan filing mandate: if a debtor filed for bankruptcy protection under Subchapter V and was proceeding toward development of a plan, but then was stymied by an unexpected governmental order shutting down the business because of a virus like COVID. The foregoing circumstances obviously would support an extension per Section 1189(b). And, there are many other examples that would too: a natural disaster (hurricane or earthquake) shutting down a debtor's business, a fire destroying a debtor's

5

business records, a computer virus disabling a debtor's information systems, the death of a debtor's principal, an employee strike against a debtor causing work stoppage, the unexpected retirement of a debtor's key accountant responsible for making financial projections, or the incapacity of bankruptcy counsel responsible plan drafting just before the deadline etc . . . . The Beyond-the-Debtor's-Control Standard simply requires that there is a bona fide external reason why a debtor cannot meet the timing mandate of Section 1189(b) even with due diligence in trying to do so. The Beyond-the-Debtor's-Control Standard flows naturally from the text of Section 1189(b). *See Majestic Gardens Condo.*, 637 B.R. at 756 (denying Section 1189(b) extension and ruling "[t]he plain language of the statute sets 'a clearly higher standard' that the 'excusable neglect' standard of Rule 9006(b)(1) and requires that the debtor establish that 'the delay necessitating the extension was caused by circumstances beyond the debtor's control.'").

### b. **The Mixed Standard**.

The *Trepetin* decision, 617 B.R. 841, is an example of what the Court refers to as a "Mixed Standard." The Court uses that phrase because the decision seems to mix and match ending up in a confusing middle ground. After observing the lack of any legislative history for Section 1198(a), the *Trepetin* court delved into a virtually identical language contained in Section 1221 pertaining to Chapter 12 family farmer reorganizations. Section 1221 provides:

> The debtor shall file a plan not later than 90 days after the order for relief under this chapter, except that the court may extend such period if the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable.

The *Trepetin* court noted that "Courts and commentators generally have interpreted the language in section 1221 to require that 'the debtor clearly demonstrates that the debtor's inability to file a plan is due to circumstances [] beyond the debtor's control.'" *Id*. at 848 (quoting *In re Gullicksrud*, 2016 WL 5496569, at *2 (Bankr. W.D. Wis. Sept. 26, 2016)). The foregoing is a restatement of the Beyond-the-Debtor's-Control Standard.

Next, the *Trepetin* court adopted the Beyond-the-Debtor's-Control Standard for Section 1189(b). *Trepetin,* 617 B.R. at 848-49 ("The Court finds it appropriate to apply a standard similar to that articulated in *Gullicksrud* to Section 1188(b) and 1189(b) . . . Not only does that standard align with the Court's understanding of Subchapter V deadlines but it also reflects the plain meaning of the words of the statute."). So far, so good. But then, the *Trepetin* court diverted to look at dictionary definitions of the words "justly" and "accountable" and ended up somewhere else. According to the *Trepetin* court: "The question thus becomes *whether the Debtor is fairly responsible for his inability to timely . . . file a plan in this Subchapter V case*." *Id*. at 849 (emphasis added). Finally, applying the foregoing, the *Trepetin* court decided that the debtor

6

satisfied Section 1189(b) because (among other things) "the Debtor's need for an extension appears fairly attributable to factors outside his control." *Id*.

The foregoing is confusing — at least to this Court. Perhaps not surprisingly, subsequent decisions have cited *Trepetin* to mean different things. *See HBL SNF*, 635 B.R. at 730 (citing *Trepetin* for "recognizing a need to balance the goals of speed and access to a realistic reorganization scheme"); *Seven Stars*, 618 B.R. at 345 ("The statute [Section 1189(b) asks if the need for an extension is due to *circumstances* beyond the debtor's control. *Trepetin*, on the other hand, asks whether *the debtor* was responsible for his inability to meet these deadlines."); *Northwest Child Dev. Ctrs.*, 2020 WL 8813586, at *2-3 (citing *Trepetin* standard as "whether the debtor is fairly responsible for his inability to timely . . . file a plan"). The *Trinity Legacy* decision, 2023 WL 6217784, at *6, best illustrates this Court's confusion about the *Trepetin* case. In *Trinity Legacy*, the court stated "*Trepetin* purports to follow the 'circumstances beyond the debtor's control' test . . . ." *Id*. But then, the *Trinity Legacy* court observed: "However, in this court's view, the standard *Trepetin* applies does not follow the 'circumstances beyond the debtor's control' test; it involves an equitable inquiry." *Id*. What to make out of all this. The Court surmises that the *Trepetin* court adopted some sort of "Mixed Standard" which may depend on the eye of the beholder.

The Mixed Standard also features in *In re Baker*, 625 B.R. 27 (S.D. Tex. 2020). In *Baker,* the court mashed together the Beyond-the-Debtor's-Control Standard and some language from the *Trepetin* case with the following result:

> Thus, in determining whether to grant the extension, this Court considers whether the need for an extension is attributable to circumstances for which Debtor is not fairly responsible or, to borrow from COLLIER, whether Debtor can "clearly demonstrate that the inability to file a plan of reorganization was due to circumstances beyond [his] control."

*Baker,* 625 B.R. at 35. And then, after that exercise, the *Baker* court created a new set of factors:

> But because no test exists within the Fifth Circuit or elsewhere that this Court can apply in determining whether the circumstances under which the Debtor makes his request meet the stringent "attributable to circumstances for which the debtor should not justly be accountable" standard, the Court will consider: (1) whether the circumstances raised by Debtor were within his control; (2) whether Debtor has made progress in drafting a plan; (3) whether the deficiencies preventing that draft from being filed are reasonably related to the identified circumstances; and (4) whether any party-in-interest has moved to dismiss or

7

> convert the debtor's case or otherwise objected to a deadline extension in any way.

*Id.* at 35. It is a lot: two tests and then four factors. But the same court later endorsed its own approach. *Excellence 2000,* 636 B.R. at 480 (noting "[t]his Court then established a four-factor test to determine whether the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable.").

### c. The Equitable Balancing Standard.

The most recent word on Section 1189(b) is *Trinity Legacy*, 2023 WL 6217784. In that case, the *Trinity Legacy* court granted the debtor four extensions of the Section 1189(b) deadline (extending the 90-day deadline by more than five months). The debtor requested a fifth extension. *Id*. at *2. In a *tour de force*, the *Trinity Legacy* court surveyed virtually all prior Section 1189(b) decisions. Rejecting application of Section 1221 precedent, the *Trinity Legacy* characterized the *Trepetin* case as supporting an "equitable inquiry." Seizing on equity, the *Trinity Legacy* court announced a new approach the Court refers to as an "Equitable Balancing Standard":

> Like the term "excusable," as used in the "excusable neglect" standard of Rule 9006(b), the term "justly," as used in § 1189(b), allows the Court to take into account all relevant circumstances surrounding the debtor's need for an extension of time to file a plan and to balance the interests of the affected parties. In striking that balance under § 1189(b), the Court should be guided by the overarching goals of subchapter V to (i) provide a process by which debtors may reorganize and rehabilitate their financial affairs, (ii) provide a framework for an expeditious and economical resolution of the case under subchapter V, and (iii) facilitate the development of a consensual plan. In striking the proper balance, the Court should give due regard to the particularly important protection § 1189(b) affords creditors because subchapter V eliminates various creditor protections available to creditors in chapter 11 cases not governed by subchapter V. Circumstances surrounding the debtor's need for an extension of time to file a plan which should be taken into account include whether the need for the extension is within the debtor's reasonable control and may include such things as the danger of prejudice by granting or refusing to grant the extension, the length of the extension, the debtor's good faith, the debtor's progress in formulating a meaningful plan, and the views of creditors as a whole and the subchapter V trustee.

8

*Id*. at *8.  Applying the Equitable Balancing Test with no evidence (other than the Court taking *sua sponte* judicial notice of the docket), the *Trinity Legacy* court granted a fifth Section 1189(b) extension for an additional 60 days.  So, the debtor was not required to file a plan of reorganization until almost a year had passed after the commencement of the Subchapter V case.

### d. The Case-by-Case Approach.

Notwithstanding the foregoing, many courts have not endorsed any particular standard and instead have proceeded on a sort of case-by-case factual analysis in adjudicating Section 1189(b) extension requests.  *HBL SNF*, 635 B.R. 725 (granting Section 1189(b) extension); *Northwest Child Dev. Ctrs.*, 2020 WL 8813586, at *3 (denying Section 1189(b) extension; "it is not necessary for the Court to take a position on whether [two other cases] present the better reasoned approach, nor is it necessary to further elaborate upon the exact parameters of the Section 1189(b) extension standard, because the Debtor here clearly fails to meet the burden under either approach.").

### 2. This Court Adopts the Beyond-the-Debtor's-Control Standard for Section 1189(b) Extension Requests.

Informed by the prior decisions of its judicial colleagues, the Court conducts its own statutory analysis.  The Court starts with the relevant text (the exception to the 90-day deadline) and breaks it into three pieces as follows:

> . . . [1] the court may extend the period [2] if the need for the extension is attributable to circumstances [3] for which the debtor should not justly be held accountable.

The first part of the Section 1189(b) exception ("the court may extend the period") allows the Court to extend the deadline for filing a plan.  Congress used the word "may" which indicates that the Court has discretion to extend or not.  *See Biden v. Texas*, 597 U.S. 785, 802 (2022) ("This Court has 'repeatedly observed' that 'the word 'may' *clearly* connotes discretion.'"); *Opati v. Repub. of Sudan*, 140 S. Ct. 1601, 1609 (2020) (use of word "may" in statute authorizing award of punitive damages "simply vests district courts with discretion to determine whether punitive damages are appropriate in view of the facts of a particular case."); *Halo Elecs., Inc. v. Pulse Elecs., Inc.* 579 U.S. 93, 103 (2016) ("the word 'may' clearly connotes discretion.").  Although the Court has substantial discretion to decide whether an extension is warranted under Section 1189(b), that discretion may only be exercised in a fashion that conforms with the balance of the statute.  The second part of the Section 1189(b) exception ("if the need for the extension is attributable to circumstances") is simple and noncontroversial: the reason for the requested extension must tie to the specific circumstances identified by the debtor.

The third part of the Section 1189(b) exception is a somewhat confusing grammatical construct: "for which the debtor should not justly be held accountable." In context, "for which" is a subordinate relative phrase modifying the noun "circumstances." The relative phrase introduces the following subordinate and relative restrictive clause: "the debtor should not justly be held accountable." The restrictive clause restricts or modifies the noun "circumstances." In other words, the clause describes the particular type of qualifying "circumstances." It is the interpretation of the relative restrictive clause in Section 1189(b) ("the debtor should not justly be held accountable") which has caused a divergence of court-announced tests.

Since the Bankruptcy Code "standardizes an expansive (and sometimes unruly) area of law," it is the Court's "obligation to interpret the Code clearly and predictably using well established principles of statutory construction." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 649 (2012) (citing *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)). The Court employs a fair reading method that dictates the primacy of the "language of the statute itself." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011) (quoting *Ron Pair Enters.*, 489 U.S. at 241).

Timing-wise, statutory interpretation should focus on the meaning of the statutory text at the time of enactment. *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 128 n.2 (2015) (interpreting the word "services" as of 1934 when the term was first used in the bankruptcy statute). Put another way, "[t]o gain a proper understanding of the statute at issue, we must put it into its historical context." *Aulston v. U.S.*, 915 F.2d 584, 585 (10th Cir. 1990). In this case, as explained below, the text ("attributable to circumstances for which the debtor should not justly be held accountable") has been used in bankruptcy law since 1996 but was re-enacted as part of Section 1189(b) quite recently in the SBRA.

Typically, the starting place for statutory interpretation is the "plain" or "ordinary" meaning of the text. *Clark v. Rameker*, 573 U.S. 122, 127 (2014); *Hamilton v. Lanning*, 560 U.S. 505, 513 (2010). As the Supreme Court explained, "[w]hen terms used in a statute are undefined, we give them their ordinary meaning." *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995); *see also Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 715 (2018) ("Because the Bankruptcy Code does not define the words 'statement,' 'financial condition,' or 'respecting,' we look to their ordinary meanings.") The "plain" or "ordinary" meaning approach also has been characterized as "fair reading." Under the "fair-reading" method, the exercise is to determine:

> how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued. The endeavor requires aptitude in language, sound judgment, the suppression of personal preferences regarding the outcome, and, with older texts, historical linguistic research. It also requires an ability to comprehend the *purpose* of the text . . . .

10

Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 33 (Thompson/West 2012) [hereinafter, "READING LAW at ___"] (emphasis in original).

The Court has little doubt about the plain or ordinary meaning of the clause: "the debtor should not justly be held accountable." It means simply that the debtor should not be responsible for external events that the debtor did not cause. And, the corollary is that the debtor is responsible for the debtor's own conduct. This corresponds exactly with the Beyond-the-Debtor's-Control Standard. Extensions may be warranted for external events beyond a debtor's control which make it impossible for a debtor to file a timely plan.

To make sure of the meaning, the Court also considers key words in the clause: "accountable" and "justly." From a lexicographical point of view, the word "accountable" is an adjective modifying the word "debtor." The word "justly" is an adverb modifying the word "should." According to the Supreme Court, dictionaries (although not dispositive) can help determine the ordinary meaning of words and phrases contained in the Bankruptcy Code. *City of Chicago, Illinois v. Fulton*, 592 U.S. 154, 158 (2021) (using dictionaries to define words "act" and "exercise" in Bankruptcy Code); *Appling*, 584 U.S. at 716 (using dictionaries to define words "statement" and "respecting" in Bankruptcy Code); *Baker Botts,* 576 U.S. at 128 (using dictionaries to define word "services" in Bankruptcy Code); *Clark*, 573 U.S. at 127 (using dictionaries to define words "retirement" and "funds" in Bankruptcy Code); *Ransom*, 562 U.S. at 69 (using dictionaries to define word "applicable" in Bankruptcy Code). According to the most influential treatise on statutory interpretation, when trying to ascertain the meaning of a word or phrase "we should consult (without apology) what the lexicographers say." READING LAW at 36.

The word "accountable" means "expected or required to account for one's actions: answerable." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 252 (Houghton Mifflin Harcourt 5th ed. 2011). *See also* WEBSTER'S THIRD NEW INT'L DICTIONARY 13 (G. & C. Merriam Co. 1968) ("accountable" means "answerable (every sane man is ____ to his conscience for his behavior"); OXFORD ENGLISH DICTIONARY 65 (Oxford University Press 1971) ("accountable" means "[l]iable to be called to account, or to answer for responsibilities and conduct: answerable, responsible."). "Responsible" is a synonym for "accountable." *Id*. The word "justly" is a word of many meanings, but in the context of Section 1189(b) best means: "with proper use of reasoning or of language with good reason or truth: rightly, properly." OXFORD ENGLISH DICTIONARY 644 (Oxford University Press 1971); see *also* WEBSTER'S THIRD NEW INT'L DICTIONARY 1228 (G. & C. Merriam Co. 1968) ('justly" means "in conformity with fact or reason: correctly, properly."). A "reasonable reader, fully competent in the [English] language" generally understands the foregoing words to have the foregoing meanings. So, the clause ("the debtor should not justly he held accountable") does mean that the debtor should not be responsible for external events that the debtor did not cause but is accountable for the debtor's own conduct.

11

While considering the constituent parts of the clause at issue — "accountable" and "justly" — might have some relevance, merely stringing the words together is not enough and could lead in the wrong direction. Instead, the entire clause ("the debtor should not justly he held accountable") must be considered as a single unit in the special context of the Bankruptcy Code. And, "[s]ometimes context indicates that a technical meaning applies." READING LAW at 73. In their seminal treatise on statutory interpretation, Justice Scalia and Bryan Gardner explained:

> Every field of serious endeavor develops its own nomenclature — sometimes referred to as *terms of art*. Where the text is addressing a scientific or technical subject, a specialized meaning is to be expected. "In terms of art which are above the comprehension of the general bulk of mankind, recourse, for explanation, must be had to those, who are most experienced in that art." And when the law is the subject, ordinary legal meaning is to be expected, which often differs from common meaning. As Justice Frankfurter eloquently expressed it: "[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it."

*Id*. (emphasis in original) (quoting Hugo Grotius, THE RIGHTS OF WAR AND PEACE 177 (1625; A.C. CAMPBELL trans. 1901); and Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947)).

Having considered the issue, the Court has reached the conclusion that while the clause ("the debtor should not justly he held accountable") does have plain or ordinary meaning, it also has specialized meaning and "old soil." The old soil is Section 1221. Section 1221 (which applies in Chapter 12 family farmer reorganizations) currently provides:

> The debtor shall file a plan not later than 90 days after the order for relief under this chapter, except that the court may extend *such* period if the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable.

(Emphasis added.) Thus, Section 1221 is exactly the same as Section 1189(b) (except that the word "such" highlighted above in Section 1221 became "the" in Section 1189(b).)

It is apparent beyond peradventure that the drafters of Section 1189(b) (enacted effective February 19, 2020) lifted the text of Section 1189(b) directly from pre-existing Section 1221 (especially so because the exact text appears nowhere else in the Bankruptcy Code and nowhere else in the United States Code). *See In re S-Tek 1, LLC*, 2023 WL 2529729, at *7 (Bankr. D.N.M. Mar. 15, 2023) ("The language of §

12

1189(b) is taken from § 1221, applicable in chapter 12 cases. Section 1189(b) is subchapter V's counterpart to § 1221, and the language of §§ 1189(b) and 1221 are identical.").

To understand what Section 1221 means and, therefore, what Section 1189(b) means, a short foray into the historical evolution of Section 1221 is warranted. Chapter 12 was originally passed in 1986 as a temporary measure designed to sunset in seven years. Chapter 12, like Subchapter V, permits only the debtor to file a plan and sets a strict 90-day deadline for the debtor to do so. 11 U.S.C. § 1221. As originally enacted in 1986, Section 1221 provided:

> The debtor shall file a plan not later than 90 days after the order for relief under this chapter, except that the court may extend such period *if an extension is substantially justified.*

(Emphasis added.) In 1993, Congress passed the Family Farm Bankruptcies Extension Act. Pub. L. No. 103-65 (Aug. 6, 1993) *reprinted in* Richard Levin & Henry J. Sommer, COLLIER ON BANKRUPTCY Vol. F App. Pt. 41(k)(1) (Lexis/Nexis 16th ed. Supp. 2023). The 1993 legislation extended the Chapter 12 sunset date from 1993 to 1998 and made only one textual modification: Congress heightened the standard for family farmers to extend the 90-day deadline for filing a reorganization plan. The legislature deleted the phrase "~~if an extension is substantially justified~~" and replaced it with the phrase "<u>if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable</u>" (which is exactly the same clause now used in Section 1189(b)).

Why did Congress make it harder to obtain extensions of the 90-day deadline? Senator Grassley explained:

> H.R. 416 makes the substantive change in chapter 12. The standard for granting an extension is altered from circumstances in which "an extension is substantially justified" to cases in which "the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable." The new standard for extensions in filing plans will provide adequate protection for agricultural lenders, while *preserving the ability of debtors to obtain extensions whenever circumstances outside their control warrant such extensions*.

139 Cong. Rec. S 10268 (daily ed. Aug. 3, 1993) (statement of Sen. Grassley) *reprinted in* Richard Levin & Henry J. Sommer, COLLIER ON BANKRUPTCY Vol. F App. Pt. 41(k)(1)(A) (Lexis/Nexis 16th ed. Supp. 2023) (emphasis added). And Representative Fish chimed in concurring:

> Section 2 of H.R. 416 *improves chapter 12 by discouraging debtor delay in filing payment plans*. Bankruptcy Code section 1221 is amended to permit an extension of a debtor's 90-day period for filing a plan only if "the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable." The *tightening of the current requirement* that an extension by [sic] substantially justified should prove helpful to creditors.

139 Cong. Rec. H 1252 (daily ed. Mar. 16, 1993) (statement of Rep. Fish) *reprinted in* Richard Levin & Henry J. Sommer, COLLIER ON BANKRUPTCY Vol. F App. Pt. 41(k)(1)(A) (Lexis/Nexis 16th ed. Supp. 2023) (emphasis added).

    The 1993 change to Section 1221 has been in place for decades. During the last 30 years, courts (at both the appellate and trial levels) consistently have construed Section 1221 as a strict Beyond-the-Debtor's-Control Standard. *Stock v. Harbicht Rsch., Inc. (In re Stock)*, 34 F.3d 1073, at *2 (Table) (9th Cir. 1994) (unpublished) ("the court should grant an extension [under Section 1221] only if the debtor's inability to file a timely plan is due to circumstances beyond the debtor's control."); *Davis v. U.S. Bank, N.A. (Ine re Davis)*, 2017 WL 3298414, at *3 (9th Cir. BAP Aug. 2, 2017) ("The standard set forth in Section 1221 is more stringent than the ordinary 'for cause shown' standard set forth in Rule 9006(b). It effectively requires the bankruptcy court, before granting an extension request, to find that the delay necessitating the extension was caused by 'circumstances beyond the debtor's control.'"). Providing a more detailed rationale, in *Gullicksrud*, 2016 WL 5496569, the court determined:

> The new [1993 change] language [in Section 1221] makes it more difficult for debtors to obtain an extension [to file a plan]. Congress substituted the new language because courts interpreted 'substantial justification' too broadly . . . . An extension [under Section 1221] should be granted only if the debtor 'clearly demonstrates that the debtor's inability to file a plan is due to circumstances [] beyond the debtor's control.

*Id*. at *1-2 (citations omitted) (granting Section 1221 extension because "Debtor has clearly demonstrated the [attorney] conflict was not created by [the debtor] and beyond her control"). Similarly, in *In re Lundberg*, 621 B.R. 561 (Bankr. W.D. N.Y. 2020), the court granted the Chapter 12 debtors an extension of time because "the development of a plan was delayed by weather, equipment failure, and the need to generate cash through a sale of assets." *Id.* at 562. Those circumstances were outside of the debtor's control. The leading bankruptcy treatise concurs and states: "it is appropriate that the debtor should be required to meet a stringent burden if a debtor seeks an extension of the 90-day period [under Section 1221]. The court should allow an extension only if the debtor clearly demonstrates that the debtor's inability to file a plan is due to circumstances that are beyond the debtor's control." Richard Levin & Henry J. Sommer,

14

COLLIER ON BANKRUPTCY ¶ 1221.01[2] (Lexis/Nexis 16th ed. Supp. 2023).  In fact, the Court has been unable to locate any contrary authority under Section 1221.

When Congress copied the exact same language used in Section 1221 into Section 1189(b), it must be presumed that Congress meant for the same Beyond-the-Debtor's-Control Standard to apply given that that had been the law for decades.  The Supreme Court has repeatedly invoked this "longstanding interpretive principle": "[w]hen a statutory term [or phrase] is 'obviously transplanted from another legal source,' it 'brings the old soil with it.'"  *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (construing bankruptcy statutes pertaining to injunctions); *Hall v. Hall*, 138 S. Ct. 1118, 1128 (2018) (same).  *See also George v. McDonough*, 596 U.S. 740, 753 (2022) ("The point of the old-soil principle is that 'when Congress employs a term of art,' that usage suffices to 'adop[t] the cluster of ideas that were attached to each borrowed word' in the absence of indication to the contrary."); *Field v. Mans*, 516 U.S. 59, 69 (1995) ("It is . . . well established that '[w]here Congress uses terms that have accumulated settled meaning . . . a court must infer, unless the statute otherwise dictates, that Congress meant to incorporate the established meaning of these terms.").  Stated slightly differently:

> When administrative and judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its administrative and judicial interpretations as well.

*Bragdon v. Abbott*, 524 U.S. 624, 645 (1998).

So, the meaning of Section 1189(b) already has been settled in the context of Section 1221.  The Court reaffirms that the Beyond-the-Debtor's-Control Standard (derived from Section 1221) is the right standard for evaluating requests for extension under Section 1189(b).

C.     **Application of Law to the Motion to Extend**.

Based on the foregoing, requests for extension of time for Subchapter V debtors to file plans of reorganization should not be routinely granted.  Instead, debtors bear the stringent or high burden of proving that the requested extension is based on circumstances "for which the debtor should not justly be held accountable."  That means circumstances beyond the debtor's control.

The circumstances offered by this Debtor in the Motion to Extend are obviously insufficient to justify an extension of the Section 1189(b) 90-day deadline.  The Debtor's only excuse for not filing its Subchapter V plan (asserted in conclusory fashion with no affidavit or evidence) is that its Financing Motion had been objected to by Male Excel and was scheduled for a Court hearing.  That type of rationale is not beyond the Debtor's control.  The Debtor could have filed its Financing Motion earlier, asked for

expedited consideration, or reached some agreement with Male Excel. Alternatively, the Debtor could have drafted around the issue in a plan: presenting a proposal in the event the Debtor prevailed on the Financing Motion and a different proposal if the Debtor lost the Financing Motion.

However, promptly after filing the Extension Motion, the Debtor withdrew its Financing Motion. So, the sole reason presented by the Debtor for an extension has been extinguished. Notably, when it withdrew the Financing Motion the Debtor advised that it anticipated filing a new financing motion after January 1, 2024. To date, the Debtor still has not filed any such motion.

So, as the record stands now, there is no basis at all for a Section 1189(b) extension of the 90-day plan filing period.

### V.     **Conclusion and Order**.

Accordingly, for the reasons set forth above, the Court:

ORDERS that the Debtor's Motion to Extend is DENIED.

January 29, 2024.

BY THE COURT:

_Thomas B. McNamara_
Thomas B. McNamara,
United States Bankruptcy Judge