**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | Case No. 23-14384-TBM |
| | ) | Chapter 11 |
| SIGNIA, LTD., | ) | |
| | ) | <u>Hearing Information</u> |
| | ) | Date:   March 7, 2024 |
| Debtor. | ) | Time:  9:00 a.m. |

---

**MALE EXCEL'S OBJECTION TO DEBTOR'S MOTION TO DISMISS CASE PURSUANT TO 11 U.S.C. § 1112(b)(1)**

---

155362069

## TABLE OF CONTENTS

I.      Introduction ................................................................................................................ 1

II.     Factual Background ...................................................................................................... 3

      A.      The Debtor Filed the Bankruptcy Case a Month After Male Excel Obtained a
             Judgment in Nevada State Court .............................................................................. 3

      B.      The Debtor Is Owned and Controlled by Two Entities That Similarly Own
             and Control the Vast Majority of the Debtor's Undisputed Unsecured
             Creditors .................................................................................................................. 5

      C.      The Debtor Attempted to Obtain Approval of an Unnecessary Insider Loan to
             Deplete Assets Available to Noninsider Creditors, but Withdrew the
             Financing Motion for the Express Purpose of Avoiding Discovery ...................... 8

III.    Legal Argument ........................................................................................................... 11

      A.      The Debtor's Admissions and Conduct Establish "Cause" under §
             1112(b)(1) ................................................................................................................ 11

            1.      The Debtor's Apparent Refusal to File a Plan Constitutes Cause under
                   § 1112(b)(4)(J) ............................................................................................. 11

            2.      Cause Exists Because the Debtor Filed the Bankruptcy Case in Bad
                   Faith ............................................................................................................. 12

      B.      Conversion—Not Dismissal—Is in the Best Interests of Creditors and the
             Estate Given the Misconduct of the Debtor and Its Apparent Strategy to Shop
             for a More Favorable Forum in a Subsequent Bankruptcy Filing ....................... 14

      C.      The Debtor's Refusal to File a Plan Precludes Application of the "Unusual
             Circumstances" Exception ...................................................................................... 18

      D.      In the Alternative, the Court Should Dismiss the Bankruptcy Case with a
             Finding That the Prepetition Male Excel Debt Is Nondischargeable in Any
             Subsequent Case .................................................................................................... 18

      E.      Male Excel Should Be Permitted to Complete Its Discovery under
             Bankruptcy Rule 2004 Before an Evidentiary Hearing on the Motion ............... 20

IV.     Conclusion ................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ciling,*
  2023 WL 166827 (B.A.P. 9th Cir. Jan. 12, 2023) ...................................................17

*In re Fox,*
  232 B.R. 229 (Bankr. D. Kan. 1999) ....................................................................11

*In re Frieouf,*
  938 F.2d 1099 (10th Cir. 1991) ....................................................................11, 19

*In re Gollaher,*
  463 B.R. 142, 2011 WL 6176074 (B.A.P. 10th Cir. Dec. 13, 2011).......................15

*Hall v. Vance,*
  887 F.2d 1041 (10th Cir. 1989) ....................................................................12, 17

*In re Landau,*
  No. 20-21114, 2022 WL 4647473 (Bankr. D. Kan. Sept. 30, 2022).......................15

*In re Norton,*
  319 B.R. 671 (Bankr. D. Utah 2005) ......................................................................19

*In re Orbit Petroleum, Inc.,*
  395 B.R. 145 (Bankr. D.N.M. 2008) ..............................................................12, 18

*In re Western Pac. Airlines, Inc.,*
  218 B.R. 590 (Bankr. D. Colo. 1998) ....................................................................15

*In re Winslow,*
  123 B.R. 641 (D. Colo. 1991) .....................................................................12, 14

**Statutes and Rules**

11 U.S.C. § 349(a) .............................................................................2, 3, 18, 19

11 U.S.C. § 1112(b)(1) ................................................................................ passim

11 U.S.C. § 1112(b)(4)(J) ............................................................................11, 12

11 U.S.C. § 1112(c) ..............................................................................................18

FED. R. BANKR. P. 2004 ...................................................................................... *passim*

ii

155362069

Male Excel Medical P.A. and Male Excel Inc. (collectively, "Male Excel") hereby submit this objection (the "Objection") to the *Debtor's Motion to Dismiss Case Pursuant to 11 U.S.C. § 1112(b)(1)* [Docket No. 208] (the "Motion") filed by Signia, Ltd. (the "Debtor") in the above-captioned case (the "Bankruptcy Case") pending under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[1]  In support of the Objection, Male Excel refers to the transcript of the meeting of creditors in this Bankruptcy Case under § 341(a) [Docket No. 73] (the "341(a) Transcript"), the *Request for Judicial Notice* (the "RJN") filed concurrently herewith, the filings and other matters of record in this Bankruptcy Case, including the admissions of the Debtor in the record, and respectfully states as follows:

## I.

## INTRODUCTION[2]

The Debtor wants a do-over.  After submitting to the jurisdiction of the Court in a thinly veiled effort to interfere with the Nevada Action, the Debtor now seeks dismissal of this Bankruptcy Case so that it may file another subchapter V case, presumptively in a different forum. Though unstated in the Motion, the Debtor's desire for a second chance is, in a way, understandable—the Debtor has slowly made evident through its shifting positions and inconsistent admissions that the Bankruptcy Case is artifice to interfere with litigation and conceal dubious transactions with its insider-creditors that represent nearly all non-Male Excel unsecured claims.  The Debtor has twisted itself in knots to foil discovery efforts that are commonplace in bankruptcy cases.  While the Debtor might want to start anew without the growing evidence of its

---

[1] Unless otherwise set forth herein, all references to "Section" or "§" refer to a section of the Bankruptcy Code.

[2] Unless otherwise defined herein, all capitalized terms used in this Introduction have the definitions set forth elsewhere in this Objection.

misconduct, the Debtor forgets that the critical issue is whether dismissal or conversion will serve the best interests of creditors and the estate.  Conversion and appointment of a chapter 7 trustee—or dismissal with a discharge bar under §349(a)—is the only relief that will truly serve the interests of creditors and the estate.

The Debtor admits it filed this Bankruptcy Case after Male Excel obtained a Judgment in the Nevada Action but before the Nevada Court was able to adjudicate a Fee Motion and Spoilation Motion that would have increased the total Judgment amount.  The Debtor claims its operations have sputtered for years.  Yet, ignoring the Judgment, the Debtor did not have significant trade debt on the Petition Date.  Instead, more than 93% of the Debtor's unsecured debts (excluding the Judgment) were owed to insiders.  Indeed, in one notable transaction, the Debtor incurred at least $2 million of debt from its parent, Sulit, to purchase a company that appears to have done little more than add significant, uncollectable accounts receivable to the Debtor's balance sheet.

Even ignoring its Petition Date motives, the Debtor's postpetition conduct has been devoted to attempts to enhance the position of insider-creditors and dodge discovery.  By way of example, the Debtor initially sought approval of a financing agreement that its principals admitted was drafted solely to benefit its parent, Sulit.  Indeed, the Debtor later admitted that the postpetition loan—which demanded that Sulit's loan be granted administrative priority over general unsecured creditors—was unnecessary given that $370,000 remained available on a prepetition, unsecured revolving line offered by Sulit.  The Debtor used the delay in approval of the insider financing as a basis to request extension of its plan filing deadline.  But, just a week after making that request, withdrew the financing motion for the express purpose of avoiding Male Excel's discovery efforts. When the Court granted renewed discovery under Bankruptcy Rule 2004, the Debtor filed this Motion to dismiss the case while admitting the Debtor would likely file a new case shortly

2

thereafter.  The Debtor is not serious about this case or its creditors—it appears to act only (and expressly) to enhance the position of its insiders and obscure efforts to probe the propriety of those alleged insider-creditor relationships.

Male Excel does not challenge the Debtor's claim that cause exists under § 1112(b)(1) to convert or dismiss this Bankruptcy Case, though the Debtor does not acknowledge that its bad faith filing is further grounds for cause.  However, Male Excel strenuously objects to the notion that dismissal would serve the best interests of creditors and the estate.  A thorough review of the applicable factors easily demonstrates that the Debtor's tactical abuses in this Bankruptcy Case will persist after dismissal.  Appointment of a trustee to operate what business is left to be salvaged—and pursue likely valuable avoidance claims against the Debtor's insiders—is more likely to produce a meaningful return to creditors under competent and neutral oversight.

In the event the Court is inclined to dismiss the case, § 349(a) and the facts of this Bankruptcy Case warrant an order finding the Male Excel debt nondischargeable in any subsequent (and, in the Debtor's terms, "likely") bankruptcy case.  Moreover, any evidentiary hearing on the Motion should await the completion of the discovery once again sought by Male Excel following the Debtor's efforts to avoid scrutiny.

## II.

## FACTUAL BACKGROUND

### A. The Debtor Filed the Bankruptcy Case a Month After Male Excel Obtained a Judgment in Nevada State Court.

1.    On August 16, 2023, the District Court for the Clark County, Nevada entered findings of fact and conclusions of law confirming a judgment in the amount of $2,051,745.00 (the "Judgment") against the Debtor, and in favor of Male Excel, in the case captioned *Male Excel*

3

155362069

*Medical, P.A. and Male Excel, Inc. v. Signia Marketing, Ltd.*, Case No. A-20-816167-B (the "Nevada Action"), pending before the Eighth Judicial District Court, State of Nevada, Department 13 (the "Nevada Court"). *See* Claim No. 7-1, Ex. 1. The Judgment additionally granted Male Excel attorneys fees and costs, subject to further briefing to confirm the amount of the award. *Id.* The Nevada Court further indicated it would consider a motion against the Debtor for spoilation of evidence in the Nevada Action. *Id.*

2.    On September 13, 2023, Male Excel filed a motion for attorney fees and costs detailing the basis for an award of $1,022,221.90 in reasonable attorney fees and $404,906.62 in recoverable costs (the "Fee Motion"). *See id.*, Exs. 2 & 3. On the same day, Male Excel submitted a motion detailing the basis for an award of $322,168.84 in spoliation sanctions against the Debtor (the "Spoilation Motion"). *See id.*, Ex. 4.

3.    On September 21, 2023, the Debtor appealed the Judgment (the "Nevada Appeal"). *See* Docket No. 43 (Debtor's Stay Mot. at 1)

4.    On September 27, 2023 (the "Petition Date"), the same day Debtor had stipulated to file its oppositions to Male Excel's Fee Motion and Sanction Motion, Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code. *See* Docket No. 1; *see also* RJN, Ex. A. Although the Debtor claimed the filing was motivated both by the entry of the Judgment and to address "considerable operational debts," the Debtor elsewhere admits that its operating losses were a longstanding feature of its operations since 2018 and reported very little trade debt in its schedules.[3] *See, e.g.*, Fell Decl., ¶ 6 at 1; 341(a) Tr. at 9-14. As of the date of this

---

[3] The Debtor asserts that it only turned a profit in 2020 due to political contracts. *See, e.g.*, Fell Decl., ¶ 6 at 1; 341(a) Tr. at 9-14. Yet, 2020 is the same year the Debtor began the purchase of an apparently worthless entity, PIC, financed with $2 million of debt from its parent, Sulit. *See* 341(a)

4

Objection, the Debtor is operating its business and managing its assets as a debtor-in-possession, pursuant to §§ 1182(2) and 1184.

**B.**     **The Debtor Is Owned and Controlled by Two Entities That Similarly Own and Control the Vast Majority of the Debtor's Undisputed Unsecured Creditors.**

5.      The Debtor is a portfolio company that provides call center services across a spectrum of industries.  *See, e.g.*, *Declaration of Jeffrey Fell in Support of First Day Motions* [Docket No. 24] (the "Fell Declaration"), ¶ 5 at 1.  It is owned by two investment entities—Sulit Group, Ltd. ("Sulit") and Vero Investment Company ("Vero")—that are ultimately controlled by Jeffrey Fell and Alfred Trexler.

6.      The Debtor and its representatives admit the following corporate ownership structure:

**Debtor's Corporate Structure**



Unless otherwise indicated, relationship information based on testimony set forth in 341(a) Transcript.
[1] Fell Decl., ¶ 2.
[2] Mot., Ex. 1 (Loan Agmt. At 9).

---

Tr., at 32:25-33:1.  The purpose and results of this transaction, and the details of the Debtor's relationship with PIC, is one of the subjects of Male Excel's pending discovery.

5

*See* 341(a) Tr. at 8:11-13; *id.* at 8:24-9:2; 13:4-9.

7.      Several other insider affiliates of the Debtor are listed as unsecured creditors in the

Debtor's schedules, and are under common ownership of Mr. Fell and Mr. Trexler, through Sulit

and Vero.[4]  The largest of these insider claims are as follows:

- **National Research & Polling Group, Ltd.**  National Research & Polling Group, Ltd. ("NRPG") is jointly owned by Sulit and Vero. *See id.* at 26:12-20.  NRPG provides client relationship management services and outsources call center work to the Debtor. *See id.*  NRPG is scheduled as holding a $543,168.10 unsecured claim based on a "revolving note" allegedly based on loans to the Debtor for operating expenses and prepayments for call center services. *See id.* at 34:2-8; Docket No. 66 (Sched. E/F, ¶ 3.16 at 4).

- **JAFT Ventures LLC.**  JAFT Ventures LLC ("JAFT") is jointly owned by Sulit and Vero. *See* 341(a) Tr. at 30:24-31:1.  JAFT owns the real property at which the Debtor's headquarters are located, in Westminster, Colorado. *Id.*; *see also* Docket No. 1 (Sched. G, ¶ 2.20 at 5).  JAFT is scheduled as holding a $384,921.47 unsecured claim based on a "revolving note;" however, the Debtor's principal testified the amount allegedly relates to unpaid rent for the Westminster location. *See id.* at 33:8-22; Docket No. 66 (Sched. E/F, ¶ 3.14 at 4).  Mr. Fell could not recall the last time the Debtor paid rent to JAFT. *See id.*

8.      Additionally, Sulit is scheduled as holding a $2,127,905.15 unsecured claim based

on a "revolving note." *See* Docket No. 66 (Sched. E/F, ¶ 3.22 at 5).  Between 2020 and 2022, the

Debtor allegedly borrowed "roughly" $2 million from Sulit to fund the Debtor's acquisition of

Public Interest Communications, Inc. ("PIC").  *See* 341(a) Tr., at 42:25-43:9.  Although the

Debtor's principal did not offer an assessment of the success of the PIC transaction, the Debtor's

principal uncollectable accounts receivable balance—in the amount of $576,348—relates to clients

acquired in the PIC transaction. *See id.* at 31:23-33:1; *see also* Docket No. 1 (Sched. A/B, ¶ 11b

---

[4] The Debtor's *Chapter 11 Small Business Balance Sheet* [Docket No. 8] also identifies intercompany payables outstanding to: DialCloud LLC in the amount of $5,400; and Sunlight Support, in the amount of $158.73. *See* Docket No. 8 at 1.  It also appears to reflect a payable between the Debtor and PIC (defined below) in the amount of $462,870.72; however, it is unclear if this is a journal entry or liability as between the entities. *Id.*

6

at 2). Despite being saddled with "significant debt" to acquire a poorly performing entity, the Debtor apparently does not believe the transaction should be the subject of a fraudulent transfer or other claim. *See* Fell Decl., ¶ 6 at 1.

9. The revolving notes attached to the proofs of claim filed by Sulit, NRPG, and JAFT contain nonstandard loan provisions that underscore the interrelatedness between Mr. Fell, Mr. Trexler, and their group of insider entities, including the Debtor. Specifically, the Sulit and NRPG unsecured notes do not mature for 20 years, and the unsecured JAFT note is on a 30 year term, with no payments required under any of the loans until maturity or default. *See* Claim Nos. 4-1 at Ex. A, 5-1 at Ex. A, 6-1 at Ex. A. Moreover, each note provides that the insider "may, at its sole option, assign this Note to any of its principals, to a spouse or any lineal descendant of its principals or to any entity owned by (directly or indirectly) a [insider] principal or under common control by [the insider]." *Id.* All other assignments are prohibited without consent. *Id.*

10. Aside from the debt owed to Male Excel, the Debtor's unsecured claims pool[5] is principally comprised of debts owed to affiliate-insiders. When adjusting for the single, disputed claim owed to Male Excel, the total asserted amount of priority and nonpriority general unsecured claims totals $3,269,338. ***More than 93 percent of undisputed, unsecured claims relate to debts of insider entities controlled by Mr. Fell and Mr. Trexler***:[6]

---

[5] The Debtor's single secured creditor is allegedly oversecured. *See* Docket No. 66 (Sched. G, ¶ 2.1 at 1).

[6] The following chart was compiled with data from the Debtor's Schedule E/F [Docket No. 66].

7

155362069

| | | |
|---|---|---|
| Total Unsecured Claims | $5,321,083.00 | |
| *Less* Scheduled Male Excel Claim | ($2,051,745.00) | |
| **Total Undisputed Unsecured Claims** | **$3,269,338.00** | |
| | | **% of Undisputed Unsecured Claims** |
| Sulit Claim | $2,127,905.15 | 65.09% |
| NRPG Claim | $543,168.10 | 16.61% |
| JAFT Claim | $384,921.47 | 11.77% |
| DialCloud LLC Claim | $5,400.00 | 0.17% |
| **Total Insider Unsecured Claims** | **$3,061,394.72** | **93.64%** |

Aside from the debt owed to Male Excel, non-insider unsecured claims total just $207,943.28, or 6.36% of all undisputed, unsecured claims.

**C.      The Debtor Attempted to Obtain Approval of an Unnecessary Insider Loan to Deplete Assets Available to Noninsider Creditors, but Withdrew the Financing Motion for the Express Purpose of Avoiding Discovery.**

11.      On September 29, 2023, the Debtor filed a motion [Docket No. 22] (the "Financing Motion") to approve a postpetition financing agreement with its parent entity, Sulit, which is controlled by the Debtor's own officers.  As set forth above, Sulit previously financed the Debtor's acquisition of PIC on an unsecured basis.  Moreover, Sulit's subsidiaries similarly offered the Debtor unsecured loans for payment of rent, operating costs, and unspecified prepaid services. With that history in mind, the terms of the postpetition financing proposed by the Debtor were a sharp about-face by comparison to its prepetition loan terms with its insiders.

12.      Unlike its prepetition dealings with the Debtor, Sulit's postpetition financing proposal did not provide for financing on an unsecured basis.  Instead, Sulit demanded a superpriority administrative claim and a first-priority lien on all post-petition accounts receivable and cash, subject to the prepetition lien of the Small Business Administration.  *See* Docket No. 22 (Financing Mot., Ex. 1 (Loan Agmt., § 11 at 3, § 15 at 4)).  The loan would become immediately

8

due and payable upon the occurrence of a litany of defaults, including, but not limited to: (i) the Debtor ceasing to be a debtor-in-possession; (ii) the entry of *any* nonmonetary judgment or order, with respect to a prepetition or postpetition action, that Sulit determined to cause "a material adverse effect" in Sulit's sole discretion; or (iii) Sulit "deems itself insecure" as a result of a material adverse change in the Debtor's financial condition. *See* Docket No. 22 (Financing Mot., Ex. 1 (Loan Agmt., § 20 at 6)). Sulit could have terminated the loan immediately—without recourse to the Court to determine whether a default has occurred—upon its determination that the Debtor defaulted. *See id.*

13.  Mr. Fell's straightforward testimony at the § 341(a) meeting makes clear that he included these provisions for the benefit of Sulit—not the Debtor. Mr. Fell did not negotiate with anyone at Sulit for the loan and Sulit did not retain separate counsel. *See* 341(a) Tr. at 47:4-48:22. Debtor's counsel provided a form loan agreement "to Sulit and they revised it for this case," and, save for "maybe one redline," no further drafts or versions of drafts were exchanged between the parties. *Id.* When questioned why Sulit did not obtain a loan on similar terms to prepetition lending, Mr. Fell explained:

> MR. KOFFROTH: Did you ask to [Sulit's] representative [] to consider providing an equity infusion instead of a loan?
>
> MR FELL: No.
>
> MR KOFFROTH: Did you ask Sulit's representative, or did Sulit consider providing financing on an unsecured basis?
>
> MR. FELL: No.
>
> MR. KOFFROTH: Any reason that Sulit didn't consider that, or you didn't request that?

* * *

9

> MR. FELL: I guess it just wasn't in -- in Sulit's best interest to offer an unsecured loan to that company.  I guess that's the only answer I have.
>
> MR. KOFFROTH: Understood. Who made that determination that it wasn't in Sulit's best interest?
>
> MR. FELL: Myself and my business partner.

*Id.* at 47:11-48:6 (cleaned up).

14.     Male Excel objected to the proposed postpetition financing and propounded contested matter discovery.  *See* Docket No. 72 (Obj. to Financing Mot.); Docket No. 130 (Withdrawal Notice at 1-2).  On December 14, 2023, Male Excel moved to extend the deadline to file its plan, under § 1189(b), on the ground that the outcome of the Financing Motion would materially alter any plan.  *See* Docket No. 119.  Yet, one week later, the Debtor changed course and voluntarily withdrew the Financing Motion.  *See* Docket No. 130.  The pending contested matter discovery served as the Debtor's central rationale for voluntary withdrawing the Financing Motion.  *See id.*, ¶ 9 at 2.  The Debtor further conceded that the postpetition financing on the onerous terms demanded by Sulit was far from necessary—$370,000 of the draw limit on the Debtor's prepetition, unsecured revolving loan with Sulit remained available postpetition.  *See id.*, ¶ 8 at 2.

15.     On February 2, 2024, Male Excel obtained authority to conduct similar discovery under Bankruptcy Rule 2004.  *See* Docket Nos. 184-195.  On February 8, 2024, the Debtor filed the instant Motion to dismiss the Bankruptcy Case.

155362069

**III.**

**LEGAL ARGUMENT**

**A.**     **The Debtor's Admissions and Conduct Establish "Cause" under § 1112(b)(1).**

Section 1112(b)(1) provides that "on request of a party in interest, and after notice and a hearing, the court ***shall*** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1) (emphasis added). Section 1112(b)(4) identifies sixteen statutory bases for "cause," including "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court." *See, e.g.*, 11 U.S.C. § 1112(b)(4)(J). However, the statutory list is nonexhaustive. *See In re Frieouf*, 938 F.2d 1099, 1102 (10th Cir. 1991) ("Section 1112(b) provides a nonexhaustive list of grounds upon which a bankruptcy court may dismiss a Chapter 11 case for 'cause.'"). "In addition to the grounds listed, courts have allowed conversion or dismissal when the debtor's petition has not been filed in good faith." *In re Fox*, 232 B.R. 229, 233 (Bankr. D. Kan. 1999).

**1.**     **The Debtor's Apparent Refusal to File a Plan Constitutes Cause under § 1112(b)(4)(J).**

The Debtor asserts that cause for dismissal or conversion is established under § 1112(b)(4)(J) based on the Debtor's inability to formulate a plan within the time fixed by the Court. The Debtor does not explain why it is unable to file a plan other than the Court's recent denial of a request to extend the deadline. *See* Mot., ¶ 4 at 1. The Court's order denying the extension found that "the sole reason presented by the Debtor for an extension has been extinguished" by the Debtor's voluntary withdrawal of the Financing Motion. Docket No. 168 (Order at 16). The Debtor does not offer further explanation why it remains incapable of filing a

11

plan—its admission that it plans to refile a "subsequent Subchapter V chapter 11 case after dismissal" suggests it has the capacity to do so. *See* Mot., ¶ 9 at 3. Nevertheless, courts in the Tenth Circuit find observed that a debtor's refusal to file a plan would satisfy the failure to file a plan standard for "cause" under § 1112(b)(4)(J). *See, e.g.*, *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989) ("Dismissal under § 1112(b)(2) is appropriate where the debtor's failure to file an acceptable plan after a reasonable time indicates its inability to do so whether the reason for the debtor's inability to file is its poor financial condition . . . or some other reason."); *In re Orbit Petroleum, Inc.*, 395 B.R. 145, 148 (Bankr. D.N.M. 2008) (finding cause where "there is no demonstration or intent on the part of the Debtor to rehabilitate itself through reorganization"). Accordingly, the Debtor's conduct and admissions establish "cause" under § 1112(b)(4)(J).

### 2.     Cause Exists Because the Debtor Filed the Bankruptcy Case in Bad Faith.

The Court may find "cause" to convert or dismiss the Bankruptcy Case where it was filed in bad faith. *See In re Winslow*, 123 B.R. 641, 646 (D. Colo. 1991), *aff'd*, 949 F.2d 401 (10th Cir. 1991). "To convert or dismiss on this basis, the court should consider, among other things, '(1) the timing of the filing of the petition, (2) the motive of the debtor in filing the petition, and (3) the accuracies or inaccuracies of the debtor's assertions in its petition and schedules.'" *Id.* (quoting *In re Block K Assocs.*, 55 B.R. 630, 633 (Bankr. D. Colo. 1985)). Courts find bad faith in a bankruptcy filing where the relevant considerations demonstrate that the "sole purpose in filing [the] bankruptcy was to avoid [] state court judgments." *Id.*

The admitted and sole purpose of the Bankruptcy Case was to interfere impermissibly with the Nevada Action before the Nevada Court ruled on the Fee Motion and Spoliation Motion. ***First***, the timing of the petition is transparent: it was filed weeks after entry of the Judgment and the filing of the Fee Motion and Spoliation Motion and the very day the Debtor was due to oppose the

155362069

motions. *Compare* Docket No. 1 (Petition filed Sept. 27, 2023) *with* Claim No. 7-1, Exs. 1 (Judgment entered Aug. 16, 2023), 2 & 3 (Fee Mot. filed Sept. 13, 2023), 4 (Spoilation Mot filed Sept. 13, 2023); *see also* RJN, Ex. A (briefing schedule).

      **Second**, the Debtor admits that the Judgment was the sole motivating factor of the bankruptcy filing. *See* 341(a) Tr. at 21:14-16 ("the lawsuit we lost in Nevada was – was a kind of tipping point"). Although, the Debtor claims it also filed to address "considerable operational debts," *id.* at 21:9-14, the alleged operating losses have been longstanding as the Debtor "has operated at a loss every year since 2018, other than in 2020." Fell Decl., ¶ 6 at 1. The Debtor's financial disclosures in the Bankruptcy Case also make clear that Male Excel represents nearly all the Debtor's unsecured, non-insider debt and do not identify any "considerable operating debts" represented by Mr. Fell at the § 341(a) meeting. *See supra*, Chart at § II.B. (compiling debts on Debtor's Schedule E/F [Docket No. 66]). Moreover, the Debtor's postpetition conduct points to its aims to interfere with litigation—its motion for relief from stay pointedly sought to limit stay relief to litigating the Appeal. *See* Docket No. 43 (Stay Mot., ¶ 7 at 1-2). The Debtor's stay motion, and subsequent objection to Male Excel's stay relief motion, made clear that the Debtor intended to leave the Fee Motion and Spoilation Motion stayed while the Debtor attempted to overturn the Judgment on Appeal. *See id.*; *see also* Docket No. 113 (Obj. to Stay Mot., at 2-4). Likewise, as set forth above, the Debtor has demonstrated no reorganizational intent through its apparent refusal to file a plan in this Bankruptcy Case. *See supra*, § III.A.1.

      **Third**, the Debtor has repeatedly rebuffed efforts to test the accuracy of the statements in its petition and schedules. The financial disclosures are of particular concern considering the massive amounts of insider debt reported by the Debtor (comprising approximately 93% of non-Male Excel unsecured claims). *See, e.g.*, Docket No. 66 (Sched. E/F, ¶¶ 3.14, 3.16, 3.22 at 4-5).

The Debtor's postpetition representations—though untested through discovery—have proven untrue, including the asserted "necessity" for postpetition borrowing from its insider that was still obligated to make available at least $370,000 to the Debtor on an unsecured basis. *Compare* Docket No. 22 (DIP Mot., ¶ 9 at 2) (asserting that the "debtor presently has inadequate cash with which to operate" requiring interim financing of $150,000) *with* Docket No. 130 (Withdrawal Not., ¶ 8 at 2) (admitting that "$370,000 of the draw limit remained available as of the bankruptcy filing date" on the Sulit unsecured, revolving loan). Male Excel has attempted to probe these representations only to be met with obfuscation: the Debtor delayed and frustrated discovery propounded in connection with the Financing Motion through voluntary dismissal of the motion explicitly intended to terminate contested matter discovery initiated by Male Excel. *See* Docket No. 130 (Withdrawal Notice at 1-2). The pattern is repeating itself once again—the Debtor moved for voluntary dismissal of the Bankruptcy Case ***just six days*** after entry of orders authorizing examinations under Bankruptcy Rule 2004. *See* Docket Nos. 184-195 (orders authorizing examinations).

Accordingly, under *Winslow* and its progeny, the Bankruptcy Case is a bad faith filing sufficient to support a finding of "cause" under § 1112(b)(1) because of the Debtor's bankruptcy filing was admittedly and solely intended to frustrate the Nevada Action and without permitting meaningful review of its financial statements in the Bankruptcy Case.

**B.      <u>Conversion—Not Dismissal—Is in the Best Interests of Creditors and the Estate Given the Misconduct of the Debtor and Its Apparent Strategy to Shop for a More Favorable Forum in a Subsequent Bankruptcy Filing</u>.**

Section 1112(b)(1) provides that "the court ***shall*** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors

and the estate" upon a showing of cause.  11 U.S.C. § 1112(b)(1).  "There is no specific numerosity requirement inherent in Section 1112(b) best interest test. The interest of a single creditor with a large enough claim will suffice."  *In re Western Pac. Airlines, Inc.*, 218 B.R. 590, 596 (Bankr. D. Colo. 1998) (quoting *In re Staff Investment Co.*, 146 B.R. 256, 261 (Bankr. E.D. Cal. 1993)).  In considering the best interests of creditors, courts analyze a series of factors, including:

> (1) whether some creditors received preferential payments, whether equality of distribution would be better served by conversion rather than dismissal; (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted; (3) whether the debtor would simply file a further case upon dismissal; (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors; (5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise; (6) whether any remaining issues would be better resolved outside the bankruptcy forum; (7) whether the estate consists of a "single asset;" (8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests; (9) whether a plan has been confirmed and whether any property remains in the estate to be administered; and (10) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*In re Gollaher*, 463 B.R. 142, 2011 WL 6176074, at *3 (B.A.P. 10th Cir. Dec. 13, 2011) (unpublished); *see also In re Landau*, No. 20-21114, 2022 WL 4647473, at *5-*6 (Bankr. D. Kan. Sept. 30, 2022) (quoting 7 Collier on Bankruptcy ¶ 1112.04[7] (Richard Levin & Henry J. Sommer eds., 16th ed.)).

The Debtor's cursory analysis of the relevant factors governing the best interests of creditors and the estate obfuscates that they weigh clearly in favor of conversion.  Analysis of the relevant factors is as follows:

- ***Factor 1: Preferences and Equality of Distribution.***  The Debtor claims that "equality of distribution would be better served by dismissal because . . . dismissal will permit the Debtor to continue operating and address debts owed to all creditors" rather than a liquidation that would pay only the Debtor's secured

15

creditor. Mot., ¶ 8 at 3. But, the Debtor admits that it already plans to "soon file a subsequent Subchapter V chapter 11 case after dismissal. *Id.*, ¶ 9 at 3. It is hard to imagine how this maneuver is intended to ensure equality of distribution where the Debtor is already in bankruptcy. Moreover the Debtor provides no evidence that "no potentially avoidable preferential transfers were made prior to the bankruptcy filing." *Id.*, ¶ 8 at 3.

- **_Factor 2: Loss of Rights on Dismissal._** Dismissal would again frustrate Male Excel's discovery efforts authorized by the Court's recent orders [Docket Nos. 184-195] under Bankruptcy Rule 2004. The Debtor's offer to "extend" the relief to a subsequent case does not change that the right is lost post-dismissal and merely restates Male Excel's rights under Bankruptcy Rule 2004 in any subsequent case. *See* Mot., ¶ 10 at 3. Moreover, the estate would lose the right to pursue potentially valuable fraudulent transfer claims that appear to exist based on the $2 million in loans Sulit provided to the Debtor to acquire an apparently valueless PIC. *See* 341(a) Tr., at 42:25-43:9. These oversight rights and estate claims against insiders are valuable legal rights that will disappear upon dismissal.

- **_Factor 3: Whether the Debtor Will File a Subsequent Case._** The Debtor admits that it will "soon file a subsequent Subchapter V chapter 11 case after dismissal. Mot., ¶ 9 at 3. The move appears either a forum shopping gambit or an effort to circumvent the plan filing deadline under § 1189(b) already enforced in this Court's order denying an extension request. *See* Docket No. 168.

- **_Factor 4: A Trustee's Ability to Reach Assets._** As noted above, it appears that the estate may hold valuable avoidance claims against insiders. A trustee may be better equipped to pursue those claims against the Debtor's insiders.

- **_Factor 5: Maximizing the Estate's Value._** The Debtor has repeatedly admitted that its core business has almost never turned a profit and points to no material claims that can be adjusted in or out of bankruptcy. The material assets appear to be avoidance claims that can be best maximized in bankruptcy.

- **_Factor 6: Remaining Issues to be Resolved Outside of Bankruptcy._** The Nevada Action and Appeal are the only remaining, significant matters pending resolution outside of bankruptcy. However, they pertain solely to liquidation of Male Excel's claim. Relief from stay was previously granted in this Bankruptcy Case for these efforts to proceed to final judgment. *See* Docket Nos. 84, 129. Accordingly, dismissing the bankruptcy case will do little to advance resolution of the Nevada Action.

- **_Factor 7: Single Asset._** The estate does not consist of a single asset. The Debtor's assets include its going concern value, assets, and litigation claims.

- **_Factor 8: Debtor Misconduct._** The Bankruptcy Case is replete with attempts to engage in misconduct, some of which have been more successful than others. **_First_**,

the Debtor initially attempted to soak-up any unencumbered assets available for distribution to unsecured creditors through a needless postpetition loan from its insider. The Debtor admitted that the terms of the proposed postpetition financing were negotiated by the Debtor's principal solely for the interest of its insider, Sulit. *See* 341(a) Tr. at 47:11-48:6. The Debtor later admitted that the same insider was still obligated to provide lending on an unsecured basis postpetition under a prepetition revolving agreement. ***Second***, the Debtor has also repeatedly frustrated discovery efforts aimed, in part, at probing the Debtor's unusual relationships with a series of insiders. As set forth herein, the Debtor withdrew the Financing Motion to terminate contested matter discovery and is attempting to dismiss this Bankruptcy Case to avoid scrutiny of pending discovery. ***Third***, the Debtor has also used the Bankruptcy Case as an impermissible tool to pick-and-choose the portions of the Nevada Action and Appeal to which the stay should apply. The Debtor will undoubtedly continue its efforts to interfere with creditors following dismissal.

- ***Factor 9: Whether a Plan Is Confirmed.*** As set forth above, the Debtor has refused to file a plan.

- ***Factor 10: Whether Trustee Appointment Will Aid Supervision of the Estate.*** As set forth above, the appointment of a trustee will ensure that potentially valuable claims against insiders are pursued.

Accordingly, the factors nearly uniformly counsel in favor of conversion rather than dismissal to serve the interests of the Debtor's creditors.

Importantly, the Court should not accept the Debtor's efforts to alter the analysis into something more favorable to the Debtor. The Debtor leans on the incorrect notion (applied in chapter 7 cases) that the Debtor's preference of dismissal should be granted weight unless "plain legal prejudice" to creditors would result. *See* Mot., ¶ 5 at 2 (citing *Gill v. Hall (In re Hall)*, 15 B.R. 913, 917 (B.A.P. 9th Cir. 1981)). But, the Ninth Circuit Bankruptcy Appellate Panel has rejected application of the *Hall* case cited by the Debtor, and the "plain legal prejudice" standard set forth therein, for dismissals under § 1112. *See, e.g.*, *In re Ciling*, 2023 WL 166827, at *3 (B.A.P. 9th Cir. Jan. 12, 2023) (distinguishing *Hall* as "allud[ing] to plain legal prejudice in the context of a [Bankruptcy] Act case and a chapter 7 case" and rejecting application to dismissals in chapter 11). The Debtor's effort to manufacture a more favorable standard should be rejected. As

17

set forth above, conversion clearly best serves the interests of creditors and the estate—the appropriate focus under the plain language of § 1112(b)(1).

## C.   The Debtor's Refusal to File a Plan Precludes Application of the "Unusual Circumstances" Exception.

Section 1112(c) provides that the "court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate." 11 U.S.C. § 1112(c). However, those unusual circumstances must be accompanied by evidence that (i) there is a reasonable likelihood a plan will be confirmed, and (ii) the cause for dismissal or conversion can be cured. *See id.* Although unusual circumstances are not defined in the Bankruptcy Code, "the import of section 1112(b) is that, if cause exists, the case should be converted or dismissed unless unusual facts or circumstances demonstrate that the purposes of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding." *In re Orbit Petroleum, Inc.*, 395 B.R. 145, 148-149 (Bankr. D.N.M. 2008) (quotation omitted) (finding unusual circumstances where plan would pay all creditors in full). Here, the Debtor has refused to (or is unable to) file a plan and has already exceeded the plan filing deadline set forth in § 1189(b). Accordingly, the Debtor's circumstances render it incapable of satisfying the statutory unusual circumstances exception to conversion.

## D.   In the Alternative, the Court Should Dismiss the Bankruptcy Case with a Finding That the Prepetition Male Excel Debt Is Nondischargeable in Any Subsequent Case.

The Court should preclude the Debtor from discharging the Male Excel debt in any subsequent case to the extent the Court finds dismissal in the best interest of creditors and the estate. Pursuant to § 349(a),

18

> [u]nless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title."

11 U.S.C. § 349(a). "[S]ection 349(a), by its plain language, must be read as allowing a bankruptcy court, 'for cause,' to permanently disqualify a class of debts from discharge." *In re Frieouf*, 938 F.2d 1099, 1102 (10th Cir. 1991); *see also In re Norton*, 319 B.R. 671, 685 (Bankr. D. Utah 2005) (holding that *Frieouf* "does not place any restriction on a court's ability to bar the discharge of current debts in future bankruptcy cases"). Precluding discharge of a debt, under § 349(a), requires a finding that "the debtor acted in bad faith and in a manner that was prejudicial to his creditors." *Frieouf*, 938 F.2d at 1105. Factors include delay in filing a plan, conduct evidencing a pattern of evasion, and efforts to interfere with the exercise of creditors' rights. *Id.*

As set forth above, the Bankruptcy Case amounts to a mere litigation tactic that has done little other than delay legitimate litigation and post-Judgment discovery efforts. The Judgement represents the vast majority of the Debtor's noninsider unsecured debt. The Debtor filed the Bankruptcy Case weeks after entry of the Judgment, shortly after the Fee Motion and Spoilation Motion were filed, and the day its oppositions to those motions were due. The Debtor immediately attempted to limit stay relief solely to its efforts to overturn the Judgment on Appeal. The Debtor attempted to approve on a final basis postpetition financing from an insider on terms admittedly drafted solely to benefit the insider-creditors. The Debtor dismissed the financing motion—the pretext to delay filing a plan— only after it faced contested matter discovery delving into the relationships between Signia and its insiders. When Male Excel reissued discovery under Bankruptcy Rule 2004, the Debtor filed the Motion to dismiss the Bankruptcy Case. Yet, the Debtor still claims it will shortly refile a bankruptcy case in a thinly veiled effort to either forum

19

shop or sidestep the plan deadline under § 1189(b).  Taken together, the Bankruptcy Case (and plan to refile again) clearly represent an abusive litigation tactic rather than a genuine reorganizational effort.  As such, the Court should preclude the Debtor from discharging the Male Excel debt in any subsequent bankruptcy case if it is inclined to order dismissal.

E.    **Male Excel Should Be Permitted to Complete Its Discovery under Bankruptcy Rule 2004 Before an Evidentiary Hearing on the Motion.**

The Debtor should not be permitted to utilize successive motions and withdrawals to whipsaw Male Excel between contested matter and Bankruptcy Rule 2004 discovery.  To the extent the Court determines that the Motion requires an evidentiary hearing, Male Excel requests that it be permitted to proceed with discovery under Bankruptcy Rule 2004 to be completed in advance of an evidentiary hearing on the Motion.

## IV.

## CONCLUSION

For the reasons set forth herein, Male Excel respectfully requests that the Court enter an order: (i)(a) converting the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code, or (b) in the alternative, dismissing the Bankruptcy Case with a two-year bar to refiling; and (ii) granting Male Excel such other and further relief as is just and appropriate under the circumstances.

Dated: February 22, 2024

**FOX ROTHSCHILD LLP**

*/s/ Christopher T. Groen*
Christopher T. Groen, Atty. No. 39976
cgroen@foxrothschild.com
1225 17th Street, Suite 2200
Denver, CO 80202
Tel:     303.292.1200
Fax:     303.292.1300

- and-

**HONE LAW**
Eric D. Hone (NV Bar No. 8499)
ehone@hone.law
Leslie A. S. Godfrey (NV Bar No. 10229)
lgodfrey@hone.law
701 N. Green Valley Parkway, Suite 200
Henderson, NV 89074

*Counsel to Male Excel Medical P.A. and
Male Excel Inc.*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of February, 2024, I served a true and correct copy of the foregoing **MALE EXCEL'S OBJECTION TO DEBTOR'S MOTION TO DISMISS CASE PURSUANT TO 11 U.S.C. § 1112(b)(1)** via CM/ECF and first-class United States mail, postage prepaid, on the following:

Mark David Dennis
SL Biggs, A Division of SingerLewak LLP
2000 S. Colorado Boulevard
Tower 2, Suite 200
Denver, CO 80222

Jonathan Dickey
Kutner Brinen Dickey Riley, P.C.
1660 Lincoln Street, Suite 1720
Denver, CO 80264

Leslie Godfrey
Eric D. Hone
Hone Law
701 North Green Valley Parkway
Suite 200
Henderson, NV 89074

Signia, Ltd.
6521 West 91st Avenue
Westminster, CO 80031

David V. Wadsworth
Lindsay Riley
Wadsworth Garber Conrardy, P.C.
2580 West Main Street, Suite 200
Littleton, CO 80120

Kevin S. Neiman
999 18th Street, Suite 1230 S
Denver, CO 80202

Benjamin Sales
DOJ-UST
1961 Stout Street, Suite 12-200
Denver, CO 80294

U.S. Trustee
1961 Stout Street, Suite 12-200
Denver, CO 80294

Stacey Dawes
U.S. Small Business Administration
721 19th Street
Denver, CO 80202

/s/ Rhonda A. Hanshe
for Fox Rothschild LLP

22

155362069